# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### ORLANDO DIVISION

JOHN BREHM,

                Plaintiff,

-vs-                                                         Case No. 6:11-cv-965-28GJK

SEMINOLE TOWNE CENTER LTD
PARTNERSHIP,

                Defendant.
_____

## REPORT AND RECOMMENDATION

**TO THE UNITED STATES DISTRICT COURT:**

This cause came on for consideration, without oral argument, on the following motion:

| |
|---|
| **MOTION:**    **DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT (Doc. No. 13)** |
| **FILED:**       **October 6, 2011** |
| **THEREON** it is **RECOMMENDED** that the motion be **GRANTED in part** and **DENIED in part**. |

### I. BACKGROUND

On June 9, 2011, Plaintiff, John Brehm, filed a Complaint against Defendant, Seminole Towne Center Ltd. Partnership, alleging claims for discrimination in violation of Title VII of the Civil Rights Act of 1964, discrimination in violation of 42 U.S.C. § 1981, discriminatory retaliation in violation of Title VII and defamation per se. Doc. No. 1. On July 20, 2011, Plaintiff filed an Amended Complaint that asserts the same claims, but includes additional supporting allegations. Doc. No. 8.

Plaintiff alleges he is a male who was employed by Defendant as a "Guest Service

1

Representative from January 19, 2004 until July 11, 2009." Doc. No. 8 at 2, ¶¶ 6, 9. Plaintiff alleges that he applied to be promoted for openings in the mall office "on March 2, 2009, and on at least two prior occasions." Doc. No. 8 at 2, ¶ 9. Plaintiff alleges that Defendant not only denied his applications but also denied him the "opportunity to apply in-person and be interviewed for the promotions." Doc. No. 8 at 2-3, ¶ 9. Plaintiff alleges that Defendant assured him "that the promotions he was denied in 2006-2008 were decided on the basis of tenure and merit." Doc. No. 8 at 3, ¶ 9. However, Plaintiff alleges, that it became increasingly apparent that Defendant "only promotes other similarly situated employees that [are] the opposite gender into 'mall office', administrative and managerial positions." Doc. No. 8 at 3, ¶ 9. Plaintiff alleges that Defendant exclusively promotes females even if they have less experience, tenure and education, and that Defendant has followed this practice since at least 2007. Doc. No. 8 at 3, ¶ 11.

Plaintiff alleges that, in 2006, Defendant informed him that an "internally advertised opportunity" was awarded to a female employee "to the exclusion of [Plaintiff] because of her longer time with the company, equivalent education and work history, with the demonstrated inference that Plaintiff too could be similarly considered after such tenure and merit." Doc. No. 8 at 5, ¶ 13. Plaintiff alleges that Defendant does not have a fair or consistent organizational structure, resulting in "discriminatory hiring, promotional, 'progressive counseling', and dismissal practices," contrary to their "proclaimed status as an 'Equal Opportunity Employer.'" Doc. No. 8 at 4, ¶ 12. Plaintiff further alleges that Defendant does not define positions, such as guest service representative or administrative assistant, and does not follow a consistent hiring, promotion, disciplinary or "'progressive counseling' practices." Doc. No. 8 at 4, ¶ 12.

Somewhat inconsistent with his allegation that he applied for the March 2, 2009, opening,

Plaintiff alleges that this opportunity was "sudden and unadvertised" and awarded to a female "who had substantially less time with the company, education and at best an equivalent work history." Doc. No. 8 at 4, ¶ 13. Plaintiff alleges that he was denied the opportunity to be considered for this promotion as he was informed that the "promotional opportunity 'Is not open', because it was filled in 'about 5 minutes after [it opened]'." Doc. No. 8 at 3, ¶ 11.

In November 2008 and the Spring of 2009, Plaintiff alleges that he "was made aware . . . that at least one manager and one administrator were discussing how they could get the 'boys fired' and subsequently how they could 'get John fired'." Doc. No. 8 at 4, ¶ 12. Plaintiff alleges that his repeated attempts to discuss these statements with his supervisor were rejected. Doc. No. 8 at 4, ¶ 12. Plaintiff also alleges that when Alex Gutierrez was promoted to security supervisor that "Mr. Gutierrez informed Plaintiff that 'I can fire you now' and that plaintiff should stop working with 'the girls' . . . and instead work in operations or security under his 'orders' like a 'real man.'" Doc. No. 8 at 4-6, ¶ 14.

Plaintiff alleges that Defendant and its contractors have engaged in "intentional, individual discrimination," as well as "engaged in a pattern and practice of system-wide, systematic, gender-based and 'gender roles' discrimination based on it's [sic] organizational structure as described above." Doc. No. 8 at 6, ¶ 15. Plaintiff also alleges that he is the only male employee to have lasted over six months in an entry-level, administrative or middle management non-contractor position "at Seminole Towner Center from at least late 2003 until the present day." Doc. No. 8 at 6, ¶ 15. Plaintiff further alleges that "at least five male employees in these positions (four similarly situated as Plaintiff) either were dismissed, not re-hired or 'quit' because of various but ever increasing discriminatory acts on account of Defendant and it's [sic] managers/administrators." Doc. No. 8 at 6, ¶ 15. Plaintiff alleges

3

that Defendant also concocted "stories" arising out of his handling of a "December 2008 computer generated error" involving a gift card. Doc. No. 8 at 7, ¶ 16. Plaintiff alleges these stories have ranged from Plaintiff reporting the error to management, Plaintiff not following policy and making the error, Plaintiff giving a guest an unloaded gift card, Plaintiff leaving a loaded gift card at the booth, Plaintiff leaving a gift card in the marketing assistant's office without securing it in the safe, Plaintiff committing fraud and Plaintiff mishandling federally regulated gift cards. Doc. No. 8 at 7, ¶ 16.

Plaintiff alleges that he complained to Defendant about the discriminatory treatment against him in the Spring of 2009, but "was stunned and saddened that neither his supervisors nor the formal corporate protocol resolved or even inquired or investigated his claims, completely failing to follow any consistent practice or structure set forth in corporate policy." Doc. No. 8 at 4, ¶ 12. Plaintiff alleges that Defendant's discriminatory treatment was based on his gender and that he chose not to "formally complain" about the discriminatory treatment "until the final year of his employment, in an attempt to work through them in good faith." Doc. No. 8 at 5, ¶ 14.

Plaintiff alleges that Defendant's refusal to even permit him the opportunity to apply for the March 2, 2009, opportunity resulted in the loss "of more than double his wage, additional career opportunities and advancements and both retirement and health related benefits . . . ." Doc. No. 8 at 3, ¶ 10. Plaintiff also alleges that he "has lost income, promotion, related benefits, and his professional reputation has been increasingly and wantonly damaged, as well as his standing in the community. Plaintiffs [sic] employability, marketability, and ability to earn an income in accordance with his experience and ability have been damaged[.]" Doc. No. 8 at 6-7, ¶ 16. Plaintiff alleges that he timely filed a "Charge of Discrimination with the Equal Employment Opportunity Commission on July 9th 2009, and subsequently receiv[ed] an EEOC 'Right to Sue' letter--upon his request--within 90 days

from the filing of the original Complaint." Doc. No. 8 at 2, ¶ 5.

In Count I of Plaintiff's Amended Complaint, Plaintiff asserts a claim of discrimination, based on gender, in violation of Title VII of the Civil Rights Act of 1964. Doc. No. 8 at 8. In Count II, Plaintiff asserts a claim of discrimination, based on gender, in violation of 42 U.S.C. § 1981. Doc. No. 8 at 8. In Count III, Plaintiff alleges a claim for discriminatory retaliation in violation of Title VII. Doc. No. 8 at 9. In Count IV, Defendant alleges a claim of defamation per se. Doc. No. 8 at 9-10.

On October 6, 2011, Defendant moved to dismiss the Amended Complaint (hereafter "Motion"). Doc. No. 13. The Motion presents four main arguments: 1) Count II should be dismissed because 42 U.S.C. § 1981 only prohibits race, not sex discrimination; 2) Counts I and III should be dismissed because Plaintiff did not timely file suit after receiving a "Notice of Right to Sue from the U.S. Equal Employment Opportunity Commission;" 3) Counts I and III should be dismissed to the extent they exceed the scope of the charge of discrimination Plaintiff filed with the EEOC; and 4) Count IV should be dismissed because Plaintiff has not alleged sufficient facts to support a claim of defamation per se. Doc. No. 13 at 2. Attached to the Motion are Plaintiff's "Charge of Discrimination" and the "Notice of Right to Sue." Doc. Nos. 13-1, 13-2. The Notice of Right to Sue indicates it was mailed on March 4, 2011. Doc. No. 13-2 at 2. On October 31, 2011, Plaintiff filed his response to the Motion. Doc. No. 20. On November 15, 2011, Defendant filed a reply to Plaintiff's response. Doc. No. 25.

## II. STANDARD OF REVIEW

In determining whether a complaint should be dismissed for failing to state a claim upon which relief can be granted, all factual allegations are accepted as true. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). Although a complaint need not contain detailed factual allegations, mere labels, conclusions,

5

or a formulaic recitation of a cause of action's elements will not suffice. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Rather, the factual allegations must "raise a right to relief above the speculative level." *Id.* This requires the complaint to sufficiently allege facts that state a claim for relief that is plausible on its face. *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009). The allegations must permit the "court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Where, as here, Plaintiff is proceeding pro se, this Court is required to "liberally construe" the Complaint because pro se litigants "are held to less stringent standards for drafting pleadings than lawyers." *Tanguay v. O'Neal*, 6:00-CV-1423-ORL-31A, 2000 WL 33155887 at *1 (M.D. Fla. Dec. 20, 2000).

Generally, when passing upon a motion to dismiss, the Court is confined to the allegations of the complaint, any documents attached thereto or incorporated by reference and matters that may be judicially noticed. *Hodge v. Orlando Utilities Comm'n*, 6:09-cv-1059-Orl-19DAB, 2009 WL 5067758 at *3 (M.D. Fla. Dec. 15, 2009). If documents or matters other than those described above are considered, the motion to dismiss must be treated as one for summary judgment and the parties given a reasonable opportunity to present all material pertinent to the motion. Fed. R. Civ. P. 12(d). However, the Court may consider a document not attached to the complaint if it is "(1) central to the plaintiff's claims and (2) undisputed, meaning that the authenticity of the document is not challenged." *Hodge*, 6:09-cv-1059-Orl-19DAB, 2009 WL 5067758 at *3.

### III. ANALYSIS

#### A. Count II – 42 U.S.C. § 1981 Violation

Count II is predicated on Plaintiff's allegations that Defendant discriminated against him based on his gender. Doc. No. 8 at 8, ¶ 20. 42 U.S.C. § 1981 "addresses racial discrimination and not gender

6

bias." *Chancey v. Southwest Fla. Water Mgmt. Dist.*, No. 95-2027-CIV-T-17C, 1997 WL 158312 at *3 (M.D. Fla. Mar. 17, 1997). Section 1981 is not a statutory basis upon which to bring a gender discrimination claim. Accordingly, it is **RECOMMENDED** that Count II be dismissed.

B. **Counts I and III – Timeliness of Filing Title VII Claims**

The Court may consider the Charge of Discrimination and Notice of Right to Sue that Defendant attached to its Motion because they are central to Plaintiff's Title VII violations and Plaintiff does not challenge the authenticity of the documents. *See Hodge*, 6:09-cv-1059-Orl-19DAB, 2009 WL 5067758 at *3. In his response to the Motion, Plaintiff states: "As Exhibit A and Exhibit B clearly show, Defendant's claim for dismissal that plaintiff 'failed to file this civil action in a timely fashion' (Motion, III) is baseless. Out of respect for this honorable court's time and resources Plaintiff will make available Exhibit A and B both taken together confirming." Doc. No. 20 at 2.

Exhibit A is a copy of the certified mail label from the Equal Employment Opportunity Commission's (hereafter "EEOC") letter that contained Plaintiff's Notice of Right to Sue. Doc. No. 20 at 7. Exhibit B is a print out from the United States Postal Service's (hereafter "USPS") website indicating that notice of the letter at issue was given to Plaintiff on March 7, 2011, and the letter was delivered on March 11, 2011. Doc. No. 20 at 9. Thus, the undisputed evidence presented to the Court establishes that on March 4, 2011, the EEOC mailed Plaintiff a Notice of Right to Sue, which the USPS left Plaintiff notice of on March 7, 2011, and was ultimately delivered to Plaintiff on March 11, 2011. *See id.* A plaintiff who alleges a violation of Title VII "must file suit no later than 90 days after receiving a notice of right to sue letter from the EEOC." *Id.* at *4 (citing 42 U.S.C. § 2000e-5(f)(1)). Plaintiff filed his Complaint on June 9, 2011. Doc. No. 1.

Defendant argues that two three-day presumptions of receipt apply that render Plaintiff's Title

VII claims untimely filed. First, Defendant argues that when "the date of receipt of the EEOC's right-to-sue letter is either disputed or cannot be established, Federal Rule of Civil Procedure 6(d) creates a presumption that the plaintiff received the letter three days after it was issued by the EEOC," citing *Baldwin Co. Welcome Center v. Brown*, 466 U.S. 147, 148 n.1 (1984). Doc. No. 13 at 6. Defendant acknowledges that a plaintiff's time to file suit begins to run from the date the plaintiff actually receives the notice, but asserts that absent evidence of the actual date Plaintiff "received the right-to-sue letter, the presumption that [it] was received three days after being issued by the EEOC should apply." Doc. No. 13 at 6-7. Given the current record, it appears the date of receipt can be established and is not disputed by evidence in the record. Consequently, the undersigned **RECOMMENDS** the Court find the Rule 6 presumption inapplicable because Plaintiff has presented evidence that he received the Notice of Right to Sue on March 11, 2011.[1]

Second, in response to the evidence presented by Plaintiff, Defendant argues that the ninety-day period for filing suit began to run before the date Plaintiff actually received the Notice of Right to Sue letter because notice of that letter was given on March 7, 2011. Defendant asserts that "[w]here, as here, the USPS has left a notice that it unsuccessfully attempted to deliver, courts have held that the 90-day period begins to run three days after the receipt of the notice of attempt to deliver," citing *Zillyette v. Capital One Financial Corp.*, 179 F.3d 1337, 1342 (11th Cir. 1999), and *Smith v. CA, Inc.*, 8:07-cv-78-T-30TBM, 2008 WL 5427776 at *6 (M.D. Fla. Dec. 30, 2008). Doc. No. 25 at 2.

In *Zillyette*, 179 F.3d at 1338, appellant filed a claim of disability discrimination with the EEOC on May 10, 1996. On September 4, 1996, the EEOC sent appellant a certified letter informing him of his right to sue within ninety days. *Id.* On September 5, 1996, the postal service unsuccessfully

---

[1] Even if the Court were to apply such a presumption, the evidence presented thus far clearly indicates actual receipt of the Notice of Right to Sue did not occur until March 11, 2011.

8

attempted to deliver the letter and left a "standard notice that the letter would be redelivered or could be picked up at the post office." *Id.* at 1338-39. On September 10, 1996, the postal service again unsuccessfully attempted to deliver the letter and left a notice indicating that failure to pick up the letter would result in it being returned to the sender. *Id.* at 1339. Appellant picked up the letter sometime between September 10 and September 20. *Id.* On December 12, 1996, appellant filed his complaint. *Id.* The district court granted summary judgment, finding appellant's complaint was time barred because appellant did not file suit within ninety days from the date the letter was attempted to be delivered on September 5, 1996. *Id.*

Although appellant brought his claim under the Americans with Disabilities Act, the Eleventh Circuit noted that a plaintiff asserting such a claim must comply with the same procedural requirements to sue as a plaintiff asserting a Title VII claim. *Id.* Under Title VII, a plaintiff is required to file suit within ninety days of the EEOC notifying plaintiff it is dismissing the charge; it will not file suit; or it has not entered into a conciliation agreement. *See* 42 U.S.C. § 2000e-5(f)(1). The notification requirement is met, and the ninety days begins to run, when the plaintiff actually receives the letter of notification from the EEOC. *Zillyette*, 179 F.3d at 1339. This, however, does not give a plaintiff license to ignore his mail in order to extend the time to file suit. Whether a plaintiff has been notified by the EEOC is determined on a case-by-case basis that requires "plaintiffs to assume some minimum responsibility in resolving their claims without 'conditioning a claimant's right to sue under Title VII on fortuitous circumstances or events beyond his control which are not spelled out in the statute.'" *Id.* at 1340 (quoting *Franks v. Bowman Transp. Co.*, 495 F.2d 398, 404 (5th Cir. 1974) rev'd on other grounds, 424 U.S. 747 (1976)).

In addressing appellant's argument that the time to file suit did not commence when the first

9

notice of the letter's availability was left by the post office, the Eleventh Circuit noted:

> [I]f the delivery notice . . . failed to contain the information that the EEOC was the sender, it would have simply advised [appellant] that a letter was waiting for him at the post office, a letter that could have been from anyone. Under these circumstances, the suit letter from the EEOC could not fairly or reasonably be deemed to have been received from the date of the notice, because [appellant's] failure to retrieve the letter would have had no bearing at all on the diligence with which he was pursuing his claim. On the other hand, had the notice identified the EEOC as sender, [appellant] would have had the *de minimus* responsibility to obtain the letter in a timely manner or provide a reasonable explanation as to why this was not done. To hold otherwise would permit him simply to defer the retrieval of the letter and thus to manipulate the 90-day time limit.

*Id.* at 1341. Based on the facts of the case, the Eleventh Circuit affirmed the grant of summary judgment because there was a supporting affidavit indicating that the post office, in the normal course of business, would have included the sender's name on the notice left at appellant's home. *Id.*

After affirming the entry of summary judgment, the Eleventh Circuit stated:

> [W]e have continued to approach these issues on a case-by-case basis to fashion a fair and reasonable rule for the circumstances of each case. In addition, we have continued to require plaintiffs to assume some "minimum responsibility" in resolving their claims. Taking these considerations into account, we agree with the Second Circuit in *Sousa v. N.L.R.B.*, 817 F.2d 10, 11 (2d Cir. 1987), that a plaintiff is entitled to a reasonable time to pick up the letter upon receipt of a notice of delivery and therefore conclude that a three-day period, analogous to the federal rule governing time for taking action after service by mail, *see* Fed.R.Civ.P. 6(e), provides an appropriate period for a plaintiff to act to receive an unsuccessfully delivered letter. Providing a three-day period also provides a clear rule that will enable parties to be aware of when they must act or forfeit their right to sue.

*Id.* at 1342. Thus, based on the circumstances of that particular case, the Eleventh Circuit found a plaintiff who receives notice that a letter from the EEOC is available must shoulder the "minimum responsibility" of picking up the letter within three days of the notice. *Id.*

In *Zillyette*, the Eleventh Circuit made it clear that the commencement date for running of the ninety-day deadline is examined on a case-by-case basis. Critical to the result in *Zillyette* was the undisputed fact that the notice given by the USPS indicated the letter was from the EEOC, which put the plaintiff on notice his action or inaction would relate to the prosecution of his claim. In this case, there has been no showing what was contained in the notice the USPS left on March 7, 2011. The undersigned cannot simply assume the notice in this case identified the EEOC as the sender. As stated by the Eleventh Circuit in *Zillyette*:

> if the delivery notice . . . failed to contain the information that the EEOC was the sender, it would have simply advised [appellant] that a letter was waiting for him at the post office, a letter that could have been from anyone. Under these circumstances, the suit letter from the EEOC could not fairly or reasonably be deemed to have been received from the date of the notice, because [appellant's] failure to retrieve the letter would have had no bearing at all on the diligence with which he was pursuing his claim.

*Id.* at 1341.

In *Smith*, 2008 WL 5427776 at *6, the court interpreted *Zillyette* as imposing a presumption that a plaintiff has received the Notice of Right to Sue three days after being given notice that the letter was attempted to be delivered and, therefore, the ninety-day period to file suit begins to run on the expiration of the three days. Relying on *Smith*, 2008 WL 5427776, Defendant contends the ninety-day time period for Plaintiff to file suit began three days after the post office left a notice indicating that a letter was unsuccessfully attempted to be delivered. Doc. No. 25 at 2-3. Thus Defendant asserts that Plaintiff's Title VII claims are untimely because he did not file suit on June 8, 2011, ninety-three days after March 7, 2011, the date the post office left its notice.

The undersigned does not agree that *Zillyette* imposes a presumption that a claimant receives notice of his right to sue three days after a non-delivery notice is left at the plaintiff's residence. If the

Eleventh Circuit intended to impose a bright line rule, its discussion about whether or not the notice identified the EEOC as the sender would have been unnecessary. Further, the Eleventh Circuit in *Kerr v. McDonald's Corp.*, 427 F.3d 947, 952 (11th Cir. 2005), stated, "[w]e, however, do not employ a rule determining when a complainant has received notice of the right to sue. Rather, we have imposed upon complainants some 'minimum responsibility . . . for an orderly and expeditious resolution of their claims . . . ." The Eleventh Circuit in *Kerr* also reiterated that determining when the ninety days begins to run for a plaintiff to file suit is analyzed using a case-by-case approach. *Id.* (quoting *Zillyette*). Thus, *Zillyette* cannot be read to set forth a hard and fast rule that a plaintiff must file suit within three days after receiving a notice of an undelivered letter, independent of whether the identity of the sender is listed.

In the case at bar, the parties have not presented any information that would indicate the notice left by the USPS on March 7, 2011, identified the EEOC as the sender. Without this information, the Court cannot determine whether Plaintiff acted reasonably in picking up the letter on March 11, 2011. If the notice left by the post office did not identify the EEOC as the sender of the letter, then the letter "could have been from anyone. Under these circumstances, the suit letter from the EEOC could not fairly or reasonably be deemed to have been received from the date of the notice . . . ." *Zillyette*, 179 F.3d at 1341. Because the Court cannot resolve this factual issue on the current record, the Court must assume that Plaintiff timely filed his suit on June 9, 2011, ninety days after he actually received the letter from the EEOC on March 11, 2011. Accordingly, it is **RECOMMENDED** that the Court deny the Motion with respect to Defendant's argument that Counts I and III were not timely filed.

    **C.**    **Counts I and III – Scope of EEOC Claims Versus Those Alleged in Amended Complaint**

Defendant also argues that Counts I and III must be dismissed because they are predicated on

allegations of discrimination that are not contained in Plaintiff's charge of discrimination filed with the EEOC. Defendant contends that Count I exceeds the charge Plaintiff filed with the EEOC because Plaintiff alleges, for the first time, that he was denied a promotion on two other occasions, in addition to March 2, 2009, and was exposed to a progressively hostile work environment. Doc. No. 13 at 7-8. In regards to Count III, Defendant asserts that Plaintiff did not assert a charge of discriminatory retaliation before the EEOC and, therefore, Plaintiff may not prosecute his retaliation claim because "he has not met the jurisdictional requirements to have that claim heard in this Court." Doc. No. 13 at 10.

In the charge of discrimination Plaintiff filed with the EEOC, Plaintiff checked the box indicating his charge of discrimination was based on his sex; the discrimination took place between January 20 and May 22, 2009; and it was "Continuing Action." Doc. No. 13-1 at 2. Plaintiff did not check the box indicating his charge of discrimination was based on retaliation. Doc. No. 13-1 at 2. In setting forth the personal harm he suffered, Plaintiff indicates that in January 2009, and May 22, 2009, he was subject to disciplinary action, and that in March 2009, he was denied a promotion. Doc. No. 13-1 at 2. In his "Discrimination Statement," Plaintiff indicates that he was disciplined for violating company policies, but several female employees were not disciplined for violating the same policies. Doc. No. 13-1 at 2. Plaintiff also indicates that he was qualified and applied for an "Administrative Assistant" opening, but the position was awarded to a female employee who was less qualified and less tenured. Doc. No. 13-1 at 2.

Although Plaintiff alleges he was denied promotions prior to March 2009, and that he was exposed to a hostile work environment, the Court deems these allegations as simply providing context for Plaintiff's claim that he was denied the March 2009, promotion based on his sex. This is supported

by Plaintiff's statement in his response that "Plaintiff has not only never stated a claim for earlier denial of promotions but was completely in agreement with managerial platitudes that the original two were based on merit and seniority. Plaintiff only cites them in complaint one way [sic] to overcome any *Twombly* 'speculative level' dismissal." Doc. No. 20 at 2. Plaintiff's allegation that he was denied the opportunity to apply for the March 2009, opening is inconsistent with his charge of discrimination. However, Plaintiff also alleges that he did apply for this opening and that he was denied the position because of his sex. Construing Plaintiff's allegations liberally, it is **RECOMMENDED** that the Court deny the Motion to dismiss Count I on the basis that it exceeds the scope of Plaintiff's charge of discrimination before the EEOC.

In Count III, Plaintiff alleges discriminatory retaliation. Doc. No. 8 at 9. To make a prima facie showing of retaliation, a plaintiff must demonstrate that he engaged in statutorily protected expression, plaintiff suffered an adverse employment action and a causal connection between the two. *Shannon v. Bellsouth Telecomms., Inc.*, 292 F.3d 712, 715 (11th Cir. 2002). Plaintiff's claim of retaliation is deficient because he does not specifically allege the statutorily protected expression he engaged in. Plaintiff also does not allege what, if any, adverse employment action he suffered as a result of engaging in the statutorily protected expression. Finally, Plaintiff has not alleged a causal connection between any alleged statutorily protected expression and any adverse employment action. Accordingly, it is **RECOMMENDED** that the Court dismiss Count III without prejudice.

    **D.**    **Count IV – Defamation per se**

A party alleging defamation must allege the "(1) the defendant published a false statement (2) about the plaintiff (3) to a third party and (4) that the falsity of the statement caused injury to the plaintiff." *Valencia v. Citibank Int'l*, 728 So. 2d 330, 330 (Fla. 3d DCA 1999). When asserting a

defamation claim, the plaintiff must allege the identity of the person who published the false statement and the time frame in which the publication occurred. *Bell v. Novartis Pharm. Corp.*, 8:08-cv-30-T-17-EAJ, 2008 WL 2694893 at *4 (M.D. Fla. July 3, 2008). When a defamation claim is asserted against a corporation based on an employee's statements, the plaintiff must allege "the employee was acting at the time within the scope of his or her employment and used the alleged defamatory statements in the actual performance of his or her duties touching the matter in question." *Id.*

Count IV is predicated, in part, on Plaintiff's allegation that Defendant made up "stories" about him concerning a "December 2008 computer generated error" involving a gift card. Doc. No. 8 at 7, ¶ 16. This Count is also predicated on Plaintiff's allegation that "several of Defendant's managers, administrators and contractors have undertaken an increasing pattern of spreading false and defamatory rumors and/or statements . . . ." Doc. No. 8 at 10, ¶ 26. The allegations underlying this claim are insufficient to state a claim upon which relief can be granted because Plaintiff has not alleged the identity of the persons who published the alleged defamatory statements, has not alleged a time frame for when the alleged defamatory statements were made and has not alleged that the employees were acting within the scope of their employment and "used the alleged defamatory statements in the actual performance of his or her duties touching the matter in question." *Bell*, 8:08-cv-30-T-17-EAJ, 2008 WL 2694893 at *4. Accordingly, it is **RECOMMENDED** that the Court dismiss Count IV without prejudice.

IV. **CONCLUSION**

Based on the foregoing, the undersigned **RECOMMENDS** the following:

1. The Motion be **GRANTED** to the extent that Counts II through IV are **dismissed without prejudice**;

2. The Motion be otherwise **DENIED**; and

3. Plaintiff be granted leave to amend.

Failure to file written objections to the proposed findings and recommendations contained in this report within fourteen (14) days from the date of its filing shall bar an aggrieved party from attacking the factual findings on appeal. **The Clerk is directed to send a copy of this report and recommendation to Plaintiff by Certified Mail.**

**RECOMMENDED** in Orlando, Florida on January 12, 2012.

_____
GREGORY J. KELLY
UNITED STATES MAGISTRATE JUDGE

Copies to:
Presiding District Court Judge
Counsel of record
Unrepresented party by Certified Mail